UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES R. MCKINNEY,

    Plaintiff,

v.

BEN SANDERS, et al.,

    Defendants.

Case No. 08-cv-00723-JLR-JPD

REPORT AND RECOMMENDATION

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Charles R. McKinney, a state inmate, is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against three employees of King County Jail Health Services. Dkt. No. 4. Plaintiff alleges that Defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment when they did not provide him methadone from March 12, 2008 to March 28, 2008. *Id.* Defendants have filed a motion for summary judgment, Dkt. No. 33, to which Plaintiff has responded, Dkt. No. 38. For the reasons discussed below, the Court recommends that Defendants' motion for summary judgment, Dkt. No. 33, be GRANTED and that Plaintiff's complaint and this action be DISMISSED with prejudice.

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff was incarcerated as a pre-trial detainee at the Regional Justice Center ("RJC") in Kent, Washington from March 12, 2008 to March 28, 2008, the time period relevant to the instant action. Plaintiff had been incarcerated at the King County Correctional Facility ("KCCF") in Seattle, Washington and the RJC since July 10, 2007 awaiting trial on robbery and theft charges.[1]

During Plaintiff's incarceration at the KCCF and the RJC, he was prescribed methadone for a chronic Hepatitis C condition. On March 12, 2008, at approximately 9:00 p.m., Defendant May Moua, a registered nurse, observed what she believed to be Plaintiff "cheeking" his methadone pill (*i.e.*, hiding the pill in his mouth rather than swallowing it), when she asked him to lift his tongue so she could verify that he had swallowed the pill. Dkt. No. 33-4, ¶ 6. Plaintiff asserts that he was not "cheeking" his medication, but was instead attempting to move a stay plate in his mouth that holds a tooth in place so that he could lift his tongue. Dkt. No. 38. Plaintiff ultimately swallowed the pill and Moua verified this. Dkt. No. 33-4, ¶ 6; Dkt. No. 38.

Moua determined that Plaintiff's behavior prior to her verification that he had swallowed the pill was an "attempted diversion," which is considered aberrant drug-taking behavior under Jail Health Services' guidelines and must be noted in the inmate's medical record. *See* Dkt. No. 33-5 at 5. Defendant Moua noted in Plaintiff's medical record: ". . . observed cheeking methadone 10mg. Refer to MD/ARNP for DC." Dkt. No. 33-4 at 5. This means that Defendant Moua referred the incident to a physician or advanced registered nurse practitioner for consideration of discontinuing Plaintiff's methadone. Dkt. No. 33-4, ¶ 7.

---

[1] Plaintiff ultimately pled guilty to three counts of theft in the first degree and is currently serving his sentence at the Stafford Creek Corrections Center in Aberdeen, Washington.

After the incident, a decision was made to discontinue Plaintiff's methadone based on Defendant Moua's notation in his medical record. This was done in accordance with Jail Health Services' guidelines, which provide that if aberrant drug-taking behavior is observed, medication can be discontinued and "[t]here will be no second chances for inmates, especially for controlled substances or medication with known 'street value' in the jail." Dkt. No. 33-5 at 5. Defendant Moua did not make the decision to terminate Plaintiff's methadone, nor did she have any further involvement in Plaintiff's medical treatment during the relevant period. Dkt. No. 33-4, ¶ 8.

In response to subsequent medical kites from Plaintiff complaining about no longer receiving his methadone and being in pain, the initial decision to discontinue his methadone was considered and reviewed several times over the next two weeks by health care providers at the RJC. *See* Dkt. Nos. 4; 38-2. For example, on March 18, 2008, in response to a medical kite from Plaintiff complaining of pain, he was told: "Your explanation of the evening events regarding the 'cheeking' of your medication were reviewed and looked into. This information was reviewed with the provider[;] at this time the decision of the provider is to review this information with you at your upcoming appointment." Dkt. No. 38-2. In addition, at some time between March 15, 2008 and March 21, 2008, Plaintiff was checked by a nurse after Plaintiff pushed an emergency call button. Dkt. No. 4.

On March 26, 2008, Defendant Glenn Lirman, an advanced registered nurse practitioner at the RJC, saw Plaintiff for a physical examination. Dkt. No. 33-3, ¶¶ 4-5. Lirman was not involved in the initial decision to terminate Plaintiff's methadone medication following the March 12, 2008 incident. *Id.*, ¶ 4. Plaintiff's vital signs at the examination were "basically normal" and Lirman did not note any objective findings consistent with Plaintiff's subjective complaints of abdominal pain. *Id.*, ¶ 5. Lirman told Plaintiff that he could nonetheless resume pain medication but that, in light of the "cheeking" incident, his pain

medication would not be methadone. *Id.*, ¶ 6. However, Plaintiff wanted methadone, and he refused Lirman's offer of alternative pain medication. *Id.*

Two days later, on March 28, 2008, Lirman saw Plaintiff again. *Id.*, ¶ 7. At that time, Plaintiff agreed to an alternative pain medication and Lirman ordered him a prescription for Tramadol. *Id.*

Defendant Ben Sanders is the Medical Director of the KCCF, which includes the RJC. Dr. Sanders did not treat or examine Plaintiff between March 12, 2008 and March 28, 2008. Dkt. No. 33-5, ¶ 3. Dr. Sanders has reviewed Plaintiff's medical records for the relevant time period for this lawsuit and he believes that Plaintiff's medical treatment met the standard of care and that Plaintiff was not at any risk for an adverse medical outcome due to the termination of his methadone from March 12, 2008 to March 28, 2008.

### III. DISCUSSION

A. <u>Federal Rule of Civil Procedure 56(c)</u>

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "[The rule's] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 256. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Conclusory allegations in pleadings are not evidence, and cannot by themselves create a genuine issue of material fact. *See Project Release v. Prevost*, 722 F.2d 960, 969 (2nd Cir. 1983). Where a party fails to make a showing sufficient to establish the existence of an essential element of his case on which he bears the burden of proof at trial, all other facts are necessarily rendered immaterial and Rule 56(c) mandates the entry of summary judgment. *Celotex*, 477 U.S. at 322-23.

      B.     <u>Plaintiff Has Failed to Demonstrate That Defendants Violated his Rights</u>.

In order to state a claim for relief under § 1983, a plaintiff must assert that he suffered: (1) a violation of rights protected by the Constitution or created by federal statute, (2) that was proximately caused (3) by conduct of a person (4) acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *WAX Techs., Inc. v. Miller*, 197 F.3d 367, 372 (9th Cir. 1999). This requires the plaintiff to allege facts showing how a specific individual deprived the plaintiff of a specific right, causing the harm alleged in the plaintiff's complaint. *Arnold v. Int'l Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). The plaintiff can establish liability by showing that the defendant "personally participated" in a deprivation of the plaintiff's rights, or caused such a deprivation to occur. *Id.*

In addition, supervisory officials are generally not liable for the actions of subordinates on any theory of *respondeat superior*, or vicarious liability, under § 1983. *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). A supervisor may be liable under § 1983 only if there exists either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional

violation." *Id.* (internal quotations omitted); *see also Mackinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995). That is, the supervisor must have participated in or directed the constitutional violations, or he or she must have known of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Moreover, vague and conclusory allegations of official participation in civil rights violations are insufficient to withstand summary judgment. *See Peña v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs in violation of the Constitution's Eighth Amendment. The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This duty includes ensuring that inmates receive adequate medical care. *Id.* In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. This two-part test requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Id.* at 834. The first prong, the objective component of an Eighth Amendment claim, is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The second prong, the subjective component of an Eighth Amendment claim, has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Mere negligence or medical malpractice, without more, do not violate a plaintiff's Eighth Amendment rights. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).

Here, Plaintiff has provided no evidence showing that Defendants Moua and Sanders made the decision to terminate Plaintiff's methadone medication for time period at issue. Moua only noted in Plaintiff's medical record that she had observed Plaintiff "cheeking" his methadone pill, and referred the matter to a physician or advanced registered nurse practitioner. Moua had no further involvement. Plaintiff has not offered any evidence

showing that Moua's determination that he was "cheeking" his medication was unreasonable. While Plaintiff asserts that he was not "cheeking" his medication, he acknowledges that he was doing something out of the ordinary with his mouth (specifically, attempting to move a stay plate in his mouth that holds a tooth in place) prior to demonstrating to Moua that he had in fact swallowed the pill. Accordingly, Moua's notation in Plaintiff's medical record that she observed what she believed to be Plaintiff "cheeking" his medication was not unreasonable. Indeed, Moua was required to make the notation based upon Jail Health Services' guidelines. *See* Dkt. No. 33-5 at 5 (stating that any aberrant drug-taking behavior must be noted in inmate's medical record). Plaintiff also offers no evidence that Dr. Sanders ordered Plaintiff's methadone to be terminated or that Dr. Sanders knew that it had been terminated.

Regarding Defendant Lirman, Plaintiff only offers speculation that Lirman made the decision to discontinue Plaintiff's methadone. Plaintiff states that he "believes" Defendant Lirman made the decision based upon particular Jail Health Services' responses to Plaintiff's medical kites. *See* Dkt. No. 38. However, the Jail Health Services' responses Plaintiff relies upon, viewing them in the light most favorable to Plaintiff, at most only indicate that Lirman agreed on or about March 18, 2008 to continue keeping Plaintiff off methadone until his next medical appointment, several days after the initial decision to terminate Plaintiff's methadone had been made. *See* Dkt. No. 38-2, Exhs. 4, 5, 12. Lirman's decision to keep Plaintiff off methadone until his next medical appointment was in accordance with Jail Health Services' guidelines, which provide that once a medication discontinuation order has been made, the health care provider is to order a follow-up medical appointment "to discuss directly with the inmate-patient the appropriate course of treatment for the inmate-patient's medical needs/problems." Dkt. No. 33-5 at 6.

Even if Lirman's decision to continue to keep Plaintiff off methadone and Moua's "cheeking" notation in Plaintiff's medical record are sufficient to satisfy the "causation" element of Plaintiff's § 1983 claim, Plaintiff cannot meet either prong of the Eighth

Amendment test. Regarding the "objective component," Plaintiff makes no showing that Lirman's decision to continue keep Plaintiff off methadone, or Moua's "cheeking" notation, violated contemporary standards of decency. Moua reasonably believed that Plaintiff was "cheeking" based on his unusual conduct with his mouth when she asked him to lift his tongue. Lirman understood that Plaintiff had been observed by a nurse "cheeking" his methadone and that an earlier decision had been to terminate Plaintiff's methadone. Plaintiff's evidence reveals that Lirman looked into the matter and decided to continue to keep Plaintiff off methadone until his next appointment, which occurred just over a week later on March 26, 2008. *See* Dkt. No. 38-2, Exhs. 4, 5. While Plaintiff initially wanted methadone and refused alternative pain medication, he accepted a prescription for Tramadol at his subsequent March 28, 2008 medical appointment. None of Plaintiff's submitted documents establish that Lirman's decision to continue keep Plaintiff off methadone for another week until his next medical appointment violated contemporary standards of decency. Indeed, Lirman's actions were consistent with Jail Health Services' guidelines. While Plaintiff's opinion about what pain medication he needed may be at odds with Lirman's decision to continue keep Plaintiff off methadone, a mere difference of medical opinion is insufficient to establish an Eighth Amendment violation. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Moreover, regarding the "subjective component" of the Eighth Amendment test, Plaintiff does not show that there is a triable issue of fact regarding whether Moua or Lirman acted with "deliberate indifference" towards his medical needs. Moua only noted that she observed what she believed to be "cheeking"; there is no evidence that she did this with a culpable state of mind. Plaintiff's medical records also demonstrate that the medical staff at the RJC, including Lirman, was attentive towards Plaintiff's medical needs. The evidence demonstrates that the RJC staff responded to each of Plaintiff's medical kites between March 12, 2008 and March 28, 2008, that Plaintiff's complaints were looked into, that Plaintiff was checked by a nurse at some time between March 15, 2008 and March 21, 2008, and that

Plaintiff was examined by Lirman on March 26, 2008 and March 28, 2008. While Plaintiff may disagree with Lirman's March 18, 2008 decision to continue to keep him off methadone, Plaintiff cannot deny that he received medical attention during the time period at issue. Plaintiff's evidence also does not show that Lirman's decision was "medically unacceptable under the circumstances." *Id.* at 332. Moreover, even if Lirman's decision amounted to negligence or malpractice, that is insufficient, without more, to show a violation of Plaintiff's Eighth Amendment rights. *McGuckin*, 974 F.2d at 1059. Accordingly, Plaintiff has not satisfied his burden of showing that a genuine issue of material fact exists regarding his Eighth Amendment claim.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motion for summary judgment, Dkt. No. 33, be GRANTED and Plaintiff's complaint and this action be DISMISSED with prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 27th day of May, 2009.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge